Morning, may it please the Court, Walt Whelan for the Appellant and Plaintiff Stuart Hatler. First, Your Honors, the standard clearly delineated in the Utah Construction and Plain decision of this circuit is that the unreviewed administrative proceeding, in this case the Tuolumne County Building Appeals Board proceeding that's the subject of this appeal, need to have had sufficient procedural safeguards to be equated with a state court judgment. That is the standard, notwithstanding what the defendants have suggested in their opposition brief, that it is instead sufficient to show that it was an adequate opportunity to litigate. This test under Plain? Well, I didn't want to interrupt you, Counsel, but I'm troubled by the fact that apparently there was no pursuit of the state mandamus opportunities here. Under the state procedures, this ruling by the administrative agency can be tested, and that was never pursued. Is that correct? It is correct that that wasn't pursued. The fact that it was not pursued is not a sufficient basis to dismiss this lawsuit for two reasons. First of all, the threshold test under Plain and under Utah Construction is one that applies in any event, and it applies under Elliott and Miller and Messitia and Mack and Plain, as we cite in our opening brief. That requirement is a threshold requirement. That is that the Utah Construction test must be applied, regardless of whether or not the writ of mandate procedure was pursued. Well, don't you have to establish, if that's the case, that there were inadequate procedural safeguards in the administrative process? And that's kind of a tough issue for you, isn't it? You still have to establish inadequate procedural safeguards. We feel that overwhelmingly in the record there is a showing of inadequate procedural safeguards, and, moreover, the defendants had the burden of proof on that issue. And finally, the critical factor is that the district court indicated in its own decision that it did not consider and, frankly, it rejected a review of those irregularities, and the justification, the stated justification was that the plaintiff did not pursue the writ procedure and that that in some fashion cleansed these very severe irregularities, and that is a misapplication of the law. It's incorrect. The court still was required under this court's decision in Plain to apply the appropriate test, and what ended up happening was that that test was not applied. It was sidestepped because the trial court was persuaded that the failure to pursue that remedy in and of itself cleansed these irregularities. Now, that is not the law. The law says that still the Utah construction analysis must be applied and the court must determine whether or not this proceeding met that threshold test. And so because the court sidestepped that, there was an error that arose. The separate problem, Your Honor, is that with respect to the law that's been relied upon by the district court and which is being urged by the defendants, it does in certain circumstances make sense. Obviously, there is established law on this principle where the irregularities are evident to the aggrieved party, and the aggrieved party has the ability to raise those irregularities by means of the writ proceeding. In this situation, there were numerous irregularities that were not evident to my client at the time of the appeal proceeding, nor would they be evident by means of the normal discovery or even the exceptional discovery that's permitted in a writ proceeding. As is well established, the review that is typically performed on a writ of mandamus, an administrative writ of mandamus, is to review the record, the administrative record. There are exceptions, of course, where the evidence suggests that there may be additional factors that would come into play to allow the aggrieved party to raise fairness issues. But in this instance, there was nothing in the administrative record that put my client on notice or otherwise announced these very severe irregularities. And these include the position in your reply brief that there's no case that permits mandamus pursuant to 1094.5 for pre – for errors that are pre-hearing. You took that position. I must respectfully disagree. It's on page 28 of your reply brief. Are you still asserting that position? Let me review that, because I – You said that there's no case that permits pre-hearing procedural errors. I was discussing the Las Virginas case, and the portion that I presume Your Honor is referring to is where I say Las Virginas has nothing to do with pre-hearing procedural errors like those at issue here. That's all that I say there. For the Court, as it said in its order of a couple days ago, that we've taken the position that on an administrative mandamus, we – a party is not permitted to get into pre-proceeding procedural errors. That's simply not the case, and we're not taking that position. I'm simply contesting Las Virginas. You agree there are cases that allow you to do that. Oh, certainly. And – but that's an important distinction. There are situations where pre-proceeding issues come to light in the proceeding itself. And one of those instances in this case was that at the proceeding, it came to be known that a packet of information was submitted by Mr. Lamb to the members of this – two of which were newly selected members for the appeal panel. That came to light. That sole issue of these various, very severe irregularities would be one where on the writ of mandamus, one could argue that that would be something that my client had notice of and could have raised that as a fairness issue. But that's one of eight or nine very significant irregularities that simply were not brought to the attention of my client, nor would he have been reasonably on notice of these issues. So just to clarify, pre-proceeding things certainly can be raised if they are within the knowledge and awareness of the appellant or the claimant on a writ basis. But to say that the availability of administrative mandamus cleanses irregularities that my client did not know of nor had any reasonable basis to know of is simply unfair. And that's the other very important part of what our presentation is. In the first instance, the threshold test of Utah construction and plain must be applied, and it was not applied here. But then you go on to the next – you go on to the next layer, and you have to analyze in the facts that are presented by this case, is it fair to have the principle of law that the availability of the administrative mandamus cleanses these irregularities? And I won't enumerate all those. I've said it in the brief. I'd like to reserve a little time for rebuttal. Roberts. You may do so, Your Honor. Thank you. Mr. Lewis. Good morning, Your Honors. I'm James Lewis with the Modesto Law Firm of Dameril Nelson Shrimp, alias Fakron Silva. My associate, George Roderakis, is also in the courtroom. We're counseled for Gregory Lamb and the county of Tuolumne. And this appeal arises out of a case in Tuolumne County that ended up in the district court in Fresno. It arises out of a demolition of a series of building components that were stored on property in Jamestown. The chief building official, Gregory Lamb, determined that the buildings were dangerous and they needed to be demolished. Mr. Hattler, the property owner, appealed the decision. There was an administrative hearing, and the board, the Duly and Pennell board, determined that the building should be demolished. Mr. Hattler filed a petition for writ of mandate, but then ---- Did you say he did file a petition for writ of mandate? Mr. Hattler did file a petition for writ of mandate, but it was not pursued. All right. And then he filed an action in the federal court. The county made a motion to bifurcate the trial into two phases, and on the issue of claim preclusion. And that went to court on May 15 and 16, 2001. And the trial judge, Magistrate Judge Beck, ruled in favor of the county and issued two separate orders, one dated January 29, 2002, after the trial. And then Mr. Hattler made a motion to alter the judgment, and there was a second order entered April 26, 2002. Among other findings, the court found, one, that the administrative hearing was conducted with sufficient safeguards to equate it with a state court judgment. Well, that's the issue here. You've heard counsel's argument. He invokes Utah construction and the plane case and suggests that neither was complied with here. What is your response? Our response is that they were complied with, that Mr. Hattler had a full and fair opportunity to adjudicate his claims before the board. What about the specific aspects of the proceeding that he raises? Right. And the procedural defects that he identifies? Yes. Well, Mr. — they argue that Mr. Lamb, the chief building official, served as both a prosecutor and an adversary. However, in the Hongza Thavish case, that court held that it's not impermissible for a party to serve as both a prosecutor and an adversary so long as Mr. Lamb did not serve as a member of the adjudicatory board. And in this case, although Mr. Lamb participated, he wasn't on the board. The board was an independent board. Hattler argues that because Lamb personally selected members of the board of appeals, this created an appearance of bias. But this is an incorrect assumption based upon the following undisputed facts. Only two of the four board members recommended by Lamb were actually appointed by the board of supervisors. Each of the board members testified that he was not paid by the county and had received no compensation or monetary benefits whatsoever. These were volunteer board members. Each board member testified he had no prior business or financial relationship with either Mr. Lamb or Hattler. And consistent with the rule of necessity under Hongza Thavish and the Uniform Code for Abatement of Dangerous Buildings, each board member was qualified by experience and training in matters pertaining to building and construction. Mr. Hattler argued that there was a violation of Rule 15 for the rules of appeals and conduct of public hearings because two of the four board members said they went out and viewed the property before they issued the order of demolition. And he says they failed to disclose this at the hearing, that that was a grievous procedural error. But the facts were that they just went to the property. They looked at the property from a distance. They didn't really inspect it. And there were photographs introduced at the hearing that showed the building. It was a building where people drove by all the time. It was common knowledge in the community. So there was no prejudice by the board members not having disclosed that they had already looked at this building. And there were photographs that showed it anyway. I think the more difficult question is whether the board members appointed had jurisdiction. I thought that was a pretty good argument, that they weren't really valid board members under the regulations. You want to get to that point? Yeah. Mr. Hattler has raised some issues. He's made some arguments that they weren't duly impaneled because the allegations were that Mr. Lamb didn't allow sufficient time for notice to run before these board members were appointed. But if you look at the testimony under oath by Mr. Lamb, he said that he did send the notice out. And we have evidence that's undisputed in the record that establishes that these procedural rules were complied with. And Mr. Hattler didn't present evidence to the contrary. And in addition, all these members were approved by the board of supervisors pursuant to the uniform code. So I think the question is not your evidence, but whether he has the right to raise that issue and whether he had the opportunity to do so and secure his own evidence. Well, he certainly had the opportunity to do so had he challenged the proceeding by Administrative Writ. He was on notice of the hearing, as he pointed out, that there were – there was a packet of information. He was aware of other matters. And had he pursued the claim in superior court, he could have conducted discovery by making an application under CCP 1094.5 subdivision E. And we have cited the court cases where California courts have permitted discovery concerning administrative proceedings. It's the particular administrative proceeding that he agreed – his attorney agreed to dismiss at the time of the initial hearing in this case. Was that the case in which you say he could have asked for discovery? That's correct. And so what you're saying, if I understand your argument, at that point he had the option of leaving the Federal court, going back in and getting discovery in the State proceeding, but he chose not to do so, and staying in the Federal court obviates the problem. That's correct. They stipulated at the beginning of trial that the proceeding would be deemed dismissed. So that was on the first day of trial. It was stipulated that the petition for written mandate would be dismissed. I would like to direct this Court's attention, if I might, to the case of Miller, in particular footnote 3 of Miller. This is a Ninth Circuit case that both parties have cited. And it states, in part, it is Miller's election to pursue his claim initially in an administrative forum and forego his right to seek judicial review in State court, which requires us to determine whether that decision is binding on all that was or could have been determined there. What page are you reading from? That is page 1034, footnote 3. It starts with Miller cites Patsy and Sisk for the proposition that he's not required to exhaust administrative remedies prior to filing a suit under 1983. And I think that's an important point for the Court to consider. Also on page 1036 of the Miller decision, the Court discusses the provisions of the California Administrative Procedures Act in light of Schwartz and Druber and Westlake. And the Court, this Court states, administrative preclusion has been acknowledged in cases involving public agencies not encompassed by the California APA, such as cities. And this Court states, this policy obtains even though the allegations relate to procedural defects, such as the absence of provisions for procedural, or excuse me, pretrial discovery. There's another case that the party cited, but wasn't briefed extensively. However, it's cited in both cases. That's MOLA, development versus city of Seal Beach, 67 Cal Reporter 2nd, 103. That Court states, in part, mandamus proceedings allow courts to flesh out issues of the factual components of the dispute, including issues of procedural fairness. In that case, a real estate developer filed a two-pronged action against the city, a mandamus action, and an action for damages, inverse condemnation, and civil rights violations. Both actions arose out of the city's quasi-judicial decision to disapprove a vesting tentative map. Four days before trial, for reasons unknown, the developer dismissed the mandamus action. The defendants immediately amended their answers and moved to dismiss the remaining claims. The trial court agreed to do so. On appeal, the Court of Appeal approved, affirmed the district court, and it stated, by dismissing its mandamus action and electing to proceed exclusively for damages, MOLA denied the city the opportunity to respond to an adverse judicial ruling by remedying the wrong or mitigating the damage claimed. And that goes to the public policy rationale for judicial exhaustion remedies. They cite Patrick for the proposition, if persons affected by adverse administrative actions were permitted to refrain from challenging such actions until mitigation of damages by the government became impossible through the passage of time or events, and then present monetary claims, the financial burden on government could become overwhelming. Thank you, counsel. Your time has expired. Thank you. Mr. Whelan, you still have some reserved time. Thank you, Your Honors. I disagree with Mr. Lewis' assertion that the empanelment of the members of the appeals board is undisputed and that that was a regular inconformity with the law. On the contrary, Mr. Lamb himself supplied us with a notice of vacancy that was posted  It was only eight days before the hearing, and the time for the vacancy to be filled ran 15 days later, which was something like eight or nine days after the hearing. That's Mr. Lamb's own testimony. He made a passing comment that he thought there was some other notice that went out, but he never produced a notice, and that is less persuasive than his own testimony that the notice that went out was not consistent with the law. It's not consistent with the law either that these two members were empaneled while the old members were still on the panel and not vacated their places. So there's all kinds of procedural irregularity, and, frankly, the standard is, is this in conformity with the sufficient procedural safeguards that would be equated in a state court? In a state court in this state, you cannot have a proceeding that goes in front of a judicial officer that is not properly empaneled. It's cut and dried. That's the situation, and that's indisputably. On the contrary, it's indisputably the other way, that this was not a properly empaneled body. With regard to the other irregularities. Did you have the opportunity to raise that issue before the superior court? You started the mandamus proceeding, but then you didn't pursue it. The prior counsel that started that proceeding was not aware of any of these irregularities until I got involved with the 1983 action. You're glad he didn't hire you first, but you're sort of bound with the facts. The issue is, could he have, not whether he did an adequate job of finding out his facts, could he have raised that issue in the state proceeding which was dismissed? By the time that information was known, the action was stale. It was past the three-year prosecution period. I don't think you understand the question, obviously. Could it be raised in the state side? Could it be raised? Yes, it could be raised if that information were known timely. So the only question is, is whether or not there was a reasonable opportunity to raise the issue? That's true, and we need to recognize, Your Honor, that the only way we got to that point was the filing of a 1983 action. So if the position of this Court is that if one files a 1983 action, gathers information, then can run back to state court. No, no, that isn't the issue. The issue is whether if you had been the lawyer at the very beginning and been in the state proceeding, would you have gone over and checked the records and found out when the notice was actually done and found the facts which were necessary? No, I would not have. There was nothing that put me on notice. One would not do that. You don't go and check to see if the judicial officer that you've had a court proceeding in front of was properly sworn in. You just don't do that. And so the response is, no, I would not have done that, nor would any most reasonable practitioners. Now, once you get that information that's developed through a proceeding where you have a full panoply of discovery rights, then you're in a different position. And that's what happened after 1983 was filed. But you didn't have those discovery rights in the state mandamus procedure? We did not, because you are limited to the administrative record. You cannot ask, and that's critical. It's in our briefs, okay? The law is clear that you cannot discover past the administrative record except in limited situations. And the limited situations are where the evidence that's in the record suggests that there may be other evidence that would permit you to take issue with the fairness of that proceeding. That was not the case here. We did not have an administrative record that put my client or his then counsel on notice that there were these severe procedural irregularities. That's the distinction. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Wallace, Hall, O'Scannlain